STATE, *ex rel.* F. P. WOODWARD v. J. M. LEE, as Comptroller.

155 So. 138, 142.

Division A.

Opinions Filed December 22, 1933, and May 15, 1934.

B. A. Meginnis, for Relator;
Oxford & Cutts, for Respondent.

ELLIS, J.—The State of Florida upon the relation of F. P. Woodward procured a writ of mandamus directed to J. M. Lee, as Comptroller of the State, to compel him to "draw and issue to relator, F. P. Woodward, warrant or warrants on the State Treasurer in the aggregate sum of one thousand, four hundred and seventy-one dollars and eighty cents ($1,471.80) in payment of the salary of said F. P. Woodward as 'Assistant Engineer' for the period from January 18th, 1933, to July 1st, 1933."

The allegations of the alternative writ, aside from those matters alleged of which the Court will take judicial knowledge, are in substance that the relator was employed by the "Railway Assessing Board" in July, 1932, as "Assistant Engineer" for a period of two years from that date at a salary of $270.00 per month; that relator entered upon the duties of such position and continued to perform them until January 17, 1933, "when he was prevented and restrained from performing the same by the unauthorized action of J. M. Lee, Comptroller" of the State; that the respondent Comptroller on that date assumed and undertook to discharge the relator and required him to turn over the books, papers and documents in his possession and to vacate the office in which the work of the "Railway Assessing Board" was carried on; that such action of the Comptroller was taken without the "advice, consent or acquiescence of the

Attorney General and State Treasurer or either of them," and that neither of them has ever taken any action toward the termination of the employment of the relator, and that no action has ever been taken by the three officers constituting the Railway Assessment Board collectively or a majority of them to terminate the relator's employment; that the Comptroller has not since January 17, 1933, issued to relator a warrant in payment of the salary due to relator, although demand has been made upon him to do so; that the Comptroller did issue to relator a warrant in payment of relator's salary from January 1, to January 17, 1933, but has refused to issue to relator any warrant in payment of the salary due to him since that time; that relator has at all times been ready and willing to perform the duties required of him as "Assistant Engineer."

The Comptroller, by Messrs. Oxford and Cutts, his attorneys, demurred to the alternative writ and moved also to quash the writ. There was also a motion for compulsory amendment to the alternative writ. The case came on for oral argument on October 23rd. The motions were made on August 1st; brief for respondent was filed later, and brief for relator October 14th.

The motion for compulsory amendment sought to require the relator to set forth a copy of the minutes of the Board of July, 1932, reciting the fact of relator's employment, and to attach a copy of an alleged letter addressed "To WHOM IT MAY CONCERN" and dated January 6, 1933, in which the Comptroller announced that he had appointed the relator, Mr. Woodward, as " 'Assistant Engineer, representing' " the Comptroller's office and that the " 'appointment may be terminated at the will of the Comptroller,' " which letter the motion recites bore the endorsement of the relator in the following words: " 'F. P. Woodward, Assistant Engineer.' "

The motion for compulsory amendment is denied. The allegation of the alternative writ concerning Mr. Woodward's employment by the so-called "Railway Assessment Board" are sufficiently clear and certain that the three officials comprising that board did by resolution employ the relator in July, 1932, for a period of two years and that such resolution was entered upon the minutes of the board's transactions.

The command of the writ was correctly framed. A copy of the alleged resolution of employment is mere matter of evidence and that evidence is presumably in the custody of the three officials constituting the board. If the allegation is denied and the existence of a recorded resolution should be material to prove the employment the relator would be required to produce it or establish it by secondary evidence. There is no provision in the statutes requiring the three officials, the Comptroller, Attorney General and State Treasurer, to preserve, as a board or some State agency, minutes of their transactions. The officials named are required individually by virtue of their official positions to perform a certain duty contingent upon the performance or nonperformance of certain duties required of railroad and telegraph companies in the matter of the assessment of their properties for taxation. That duty of the three State officials is of such nature that individually and severally they must procure the information to enable them to perform it. That after procuring the information they may meet and discuss the result, which is to become a composite action of the three to be reflected in subsequent actions of the Comptroller, does not of itself constitute of the three officials a board, conclave or council, invested with the powers of a separate and distinct administrative agency.

Whatever minutes of the activities of the three officers

may be kept in writing for their convenience is at best semi-official and not required to be preserved. The point is the law requires of them severally, individually, to procure the "best information they can obtain" concerning the data upon which they are required to assess the railroad and telegraph properties for taxation. If any record is required to be made at all by the three officers as a board or committee, it would be only as to the particular assessment, but the result of such activities, whether in the form of a formal resolution or memoranda relating to each case, passes into the hands and into the control of the Comptroller, who is by statute required to apportion the assessment as the law directs.

It is a matter of general information of which the court may take judicial knowledge that "locomotives, engines, passenger, sleeping, freight, parlor, platform construction and other cars and appurtenances" of railroad companies in this State, as well as the properties of telegraph companies, constitute a very large and widely scattered class of property subject to taxation. Such property is not a fixture in the sense that it is attached to the soil and is permanently located, but on the contrary is constantly on the move. It, or some of it, may be in one place today and another tomorrow. It is capable of such manipulation or maneuvering that would produce the maximum of uncertainty, the highest degree of error in the listing and valuation of such properties for taxation, which would render it unwise for the State to intrust entirely the listing and valuation of it to the respective owners.

So the Act requires the three officials severally to procure the information concerning such properties that will lead to a fair and just valuation of it for taxable purposes which composite judgment on such matter will afford a proper

basis for action by the Comptroller in its apportionment "pro rata to each mile of main track, branch, switch, spur track and side track."

The work necessary to obtain such information adequate to a just and fair valuation for taxable purposes is difficult in the highest degree, requiring almost constant contact with, at least observation of, the location of such properties, the number of items and valuation. To impose such labor personally upon the officials would be to require of them severally to devote all or the greater part of their time to it. So it is perfectly obvious that the legislative purpose of the State was that some person or persons other than the three officers themselves should be engaged by them to acquire the information first hand from personal inspection and listing of the properties.

The nature of the employment requires a great deal of expert ability and an adequate if not complete knowledge of railroad and telegraph equipment, which the accumulation of data from time to time and years of experience would greatly increase. So that the longer one is engaged in the work the more capable he becomes and more efficient would be his services, assuming him to be a capable and honest person.

It is also obvious that as each of the three officers is morally and legally accountable for the exercise of his own judgment as to such properties and their value that if the work of acquiring the information is to be done for him he should not be required to accept without his consent the findings of an appointee of any one of the three. Such a construction would defeat the purpose of the Act and place in one officer the power to destroy the efficiency of the three whose composite judgment is to constitute the assessment. Such a procedure would imperil the interests of the State.

and open to fraud at the cost of the State the door of personal infidelity on the part of the one who assumed to select such an agent without the consent of the other two. So, ever since the enactment of the statute in 1907, Chapter 5596, which changed the provisions of Chapter 4322, Laws 1895, and the amendment of 1897, Chapter 4515, empowering the Comptroller, with the assistance and advice of the Attorney General and Treasurer of the State to assess the property from the best information possible, to a direct and mandatory command to them severally to perform that service, the administrative officers named have followed the practice jointly by unanimous consent of engaging an agent for them to procure the information. For many years past the Legislature has observed that practice and approved it by making an appropriation for the yearly salary of one such employee for that specific purpose.

The above views are justified by both administrative and legislative construction which is of great value in determining the real meaning of a statute.

"On the principle of contemporaneous exposition, common usage and practice under the statute, or a course of conduct indicating a particular understanding of it, will frequently be of great value in determining its real meaning, especially where the usage has been acquiesced in by all parties concerned, and has extended over a long period of time. * * *

"The contemporaneous construction placed upon a statute by the officers or departments charged with the duty of executing it is entitled to more or less weight, especially if such construction has been made by the highest officers in the executive department of the government, or has been observed and acted upon for a long period of time; and, while not generally controlling, where the case is not ex-

treme and no vested rights are involved, such construction should not be disregarded or overturned except for the most cogent reasons, and unless clearly erroneous." 59 C. J. 1023-1028.

See also Bloxham v. Consumers' Electric Light & St. R. Co., 36 Fla. 519, 18 South. Rep. 444; State, *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 South. Rep. 929; Amos v. Moseley, 74 Fla. 555, 77 South. Rep. 619; State, *ex rel.* Comfort v. Leatherman, 99 Fla. 899, 128 South. Rep. 21.

The Act of 1931, Chapter 15719, appropriated annually the sum of $3,600.00 for salary of the Assistant Engineer under the head of Railroad Assessment Department, which the Act provides may be "decreased or eliminated if deemed advisable by the Department, Board or Commission, as the case may be," thus recognizing that the three officials in the discharge of their duties together constitute a Railroad Assessment Department, board or commission.

The letter of Mr. Lee, Comptroller, addressed "To WHOM IT MAY CONCERN," of which mention is above made, is irrelevant, has no bearing upon the question and cannot give to the Comptroller any power to employ or discharge the employee, agent or assistant engineer for the board, commission or department.

In the view above expressed, the demurrer and motion to quash should be overruled.

The alternative writ makes a prima facie case, which entitled Mr. Woodward, in the absence of a denial of the material allegations, to the remedy he seeks.

The petition for the alternative writ and the writ itself which were filed early in August make no demand for salary to be paid to the petitioner beyond July 1, 1933. Therefore, the question whether he is entitled to his compensation to the time when the three officers by unanimous ap-

proval or approval by a majority of them dispense with his service is not before us.

Motions and demurrer overruled.

TERRELL, BROWN and BUFORD, J. J., and HUTCHISON, Circuit Judge, concur.

DAVIS, C. J., disqualified.

ORDER ENTERED DENYING MOTION FOR PEREMPTORY WRIT.

ELLIS, J.—The respondent J. M. Lee, as Comptroller, interposed an answer to the alternative writ heretofore issued in this cause on January 12, 1934. About a week prior to that date the relator by his counsel had moved this Court for a peremptory writ for failure of the Comptroller to answer the alternative writ. A copy of the relator's motion was served the same day upon attorneys for the respondent by forwarding a copy of such motion to them by United States mail. The copy of the motion contained a notice that the relator would call up the motion before the Court on the 16th day of January.

No permission of the Court was obtained by the respondent to interpose the answer after the motion for a peremptory writ had been lodged in this Court, nor was any attention whatsoever paid to the motion by respondent, nor has he since the filing of the motion nor upon the date on which it was called up for consideration by counsel for relator asked leave from the Court to interpose the answer. Whether relator's counsel has been given an opportunity to respond to the answer by motion or replication or joinder of issue does not appear from the files in this Court nor has the Comptroller furnished this Court with any evidence that a copy of the answer or notice of its attempted filing in this case has been served upon relator or his counsel.

The alternative writ required the Comptroller to show cause before this Court on August 16, 1933, why he has

refused to issue the warrant to the respondent for the amount of his salary.

Instead of replying or showing cause why the command of the writ was not obeyed the Comptroller replied with dilatory motions to quash the writ and amend it, which were denied.

On January 4, 1934, a petition for a rehearing was filed and denied but no request for leave to interpose an answer was made, nor was any order made allowing an answer to be filed or fixing the time within which it should be filed if respondent desired to make an answer.

The relator was entitled to his peremptory writ on the date he moved for its issuing in the absence of any leave granted by this Court to respondent for further time in which to answer. Ignoring the rules of procedure as he did does not give to him the right to be heard on his answer which he sought to interpose in the circumstances.

The rules applicable in mandamus and quo warranto cases in the circuit court provide that the practice will be regulated in each case to secure as speedy a determination of the cause as is justified by the circumstances of each case. Rule 79, Rules Circuit Court. That procedure is followed by this Court in cases of original jurisdiction.

Rule 4 or the Rules for the Supreme Court provides that in appeal cases when a motion is duly made further proceedings in the cause as to filing papers thereunder will be suspended until the disposition of the motion and then the filing will be regulated by special order of the Court. While that rule does not apply in terms to this case it affords a sufficient suggestion to parties as to the procedure that should be followed.

A motion to quash an alternative writ of mandamus admits as true all such matters of fact as are sufficiently

pleaded. See State, *ex rel. Burr* v. Jacksonville Terminal Co., 71 Fla. 295, 71 South. Rep. 474; State, *ex rel.* Railroad Com'rs v. Florida East Coast R. Co., 71 Fla. 433, 71 South. Rep. 543; State, *ex rel.* Globe & Rutgers Fire Ins. Co. v. Cornelius, 100 Fla. 292, 129 South. Rep. 752.

That rule of pleading being true it follows that when one party seeks to rest the sufficiency of the allegations of fact in an alternative writ of mandamus, interposes a motion to quash the writ although the admission of the alleged facts is for the purposes of the particular pleading, he should if he desires to deny those facts by an answer or reply, obtain leave of the Court to do so in the event his motion is overruled.

Notwithstanding that rule for the orderly conduct of judicial business ignored by the Comptroller we have, in the belief that the method pursued by him through his counsel was through an oversight and in no sense a wilful disregard of the rules of procedure, decided to deny at this time the motion for a peremptory writ and allow the respondent ten days from the entry of this order in which to interpose an answer to the writ denying the material allegations of employment of the relator by the "Assessment Board" for the period alleged and that he has never been discharged by a majority vote of the board from such employment, if the Comptroller desires to make such averments. The so-called answer attempted to be filed in this case and hereinbefore mentioned is stricken from the files.

So ordered.

TERRELL, BROWN and BUFORD, J. J., and HUTCHISON, Circuit Judge, agree to the conclusion.

DAVIS, C. J., disqualified.