59 So.2d 859 (1952)
KING et al.
v.
SEAMON et al.
Supreme Court of Florida, Division B.
July 8, 1952.
Lewis W. Petteway, for petitioners.
Goldstein, Klein, Burris & Lehrman, Miami Beach, for William Seamon and Al Roth, d/b/a Cavendish Bridge Club.
Walton, Hubbard, Schroeder, Lantaff & Atkins and John H. Wahl, Jr., Miami, for Southern Bell Tel. & Tel. Co.
Mallory H. Horton and George E. Owen, Asst. Attys. Gen., for Richard W. Ervin, Atty. Gen.
ROBERTS, Justice.
On this petition for writ of certiorari, we are called upon to decide whether the Florida Railroad & Public Utilities Commission (hereinafter referred to as the "Commission") is vested with authority to conduct a hearing on the question of whether "usual and customary telephone service" is being used or has been used for an unlawful purpose, when the telephone user has been notified that his service will be discontinued on account of his use thereof for an unlawful purpose, but before such service has actually been discontinued by the telephone company, under the provisions of the so-called "Anti Bookie Law," Chapter 25016, Laws of Florida, *860 Acts of 1949, as amended by Chapter 26820, Laws of Florida, Acts of 1951, being Chapter 365, Florida Statutes, same F.S.A.
As originally enacted in 1949, the Anti Bookie Law purported to regulate the furnishing of "private wire" service only, that is, a private and direct wire between two points. It was expressly provided therein that the term "private wire" should not include "the usual and customary telephone or teletypewriter service by which the subscriber may be connected at each separate call to any other telephone or teletypewriter designated by him only through the general telephone or teletypewriter exchange system or toll service". Under the provisions of the 1949 Act, the telephone company was required to enter into a written contract with the person applying for private wire service. The Act provided for the examination of such contract by the Commission and authorized the Commission and the Attorney General, as well as the State Attorney of the judicial circuit in which such private wire facilities were to be located, to conduct such investigations as were necessary to make certain that the wire would not be used in furtherance of gambling. Provision was made for notice and a hearing before the Commission on the question of whether such private wire facilities were being or would be used for gambling purposes. It was also provided by Section 8 of the 1949 Act, Section 365.08, Florida Statutes, that "Any public utility or other person party to the contract who shall feel aggrieved at the action of the commission in disapproving or cancelling any contract for any private wire shall be entitled to a hearing before the commissioners upon written request."
In March of 1950, the Commission adopted Rule No. 1592, requiring all telephone and telegraph companies of this state to refuse to install any telephone or telegraph facility "when it has reasonable grounds to believe that said facility will be used in violation of the law." It was further provided in such rule that
"Whenever any such utility is notified in writing by any state or Federal law enforcement officer acting within his apparent jurisdiction, either directly or through this Commission, that certain telephone or telegraph facilities or any part thereof, are being used or have been used in violation of any Federal law or the laws of the State of Florida, then such utility shall disconnect and remove such facilities and discontinue all telephone and telegraph service rendered over said facilities.
"Whenever installation of any telephone or telegraph facility has been refused, or said facility has been disconnected and service thereover discontinued, under this rule, said utility shall report the same to this Commission. Any person aggrieved by the action of the utility shall be entitled to present the matter to this Commission for its review and determination. If, after consideration, the Commission determines that said party is entitled to said facilities and service, and that the same will not be used in the future for unlawful purposes, then and in that event, the Commission may authorize the utility to provide said facilities and service."
This Rule No. 1592 was by the 1951 Legislature enacted verbatim as an amendment to Section 8 of the 1949 Act, Section 365.08, Florida Statutes, above quoted, with this introductory clause following the provisions of Section 8: "provided, however, that when the use which is prohibited by this chapter has to do with customary telephone service, either individual, party line or public telephone (pay station) service, such telephone service shall be discontinued or removed in the following manner:" And then follows Rule No. 1592, including that portion above quoted. Chapter 26820, Section 3, Laws of Florida, Acts of 1951.
The amendatory Act, Chapter 26820, omitted the exception as to "usual and customary telephone or teletypewriter service" contained in the 1949 Act and defined "private wire" to mean every type of service. As amended, the Act continued to require all new direct wire contracts to be submitted to the Commission before they became effective, but eliminated from this requirement contracts for customary telephone service. The provision for review *861 of direct wire contracts by the Commissioners was also retained, including the provision for a stay of cancellation if a request for a hearing was made.
In Dade County News Dealers Supply Co. v. Florida Railroad & Public Utilities Commission, Fla., 48 So.2d 89, 90, this court had under consideration the provisions of Rule No. 1592 prior to its enactment as a part of the Anti Bookie Law. It was there held that the rule was reasonable and within the authority of the Commission to adopt; that the public utility was warranted in discontinuing its telephone service when notified to do so by the Attorney General because of its use for unlawful purposes; and that, in the absence of a showing that some equitable right was being violated, the Circuit Court properly dismissed a bill to enjoin the discontinuance of service to the Dade County News Dealers Supply Company, the plaintiff therein. This court stated that "The rule provides for hearing before the Commission after the service has been discontinued but it has to do with whether or not the party is entitled to have its service restored and under what conditions restoration may be granted." (The emphasis is supplied.)
We think that the decision in the Dade County News Dealers Supply Co. case must be held to be determinative of the question with which we are here concerned. It was the contention of the Commission in that case that they had no jurisdiction to conduct a hearing on the question of whether "usual and customary telephone or teletypewriter service" should be discontinued because of alleged unlawful use; that the only relief which the Commission could give under Rule No. 1592 was to conduct a hearing after the phone was disconnected for the purpose of determining when, if at all, a user would be entitled to restoration of its telephone service. This same contention is again vigorously asserted in the instant case. As shown by the above-quoted language from the opinion in the Dade County News Dealers Supply Co. case, the Commission's interpretation of their rule was adopted by this court; and we think it is equally binding upon us in this case in construing the identical language now in the form of a statutory enactment.
The contemporaneous construction placed upon a statute by the officials charged with the duty of executing it should not be disregarded or overturned by this court except for the most cogent reasons, and unless clearly erroneous. State ex rel. Woodward v. Lee, 114 Fla. 855, 155 So. 138, 142. This is especially true where, as here, the statute is simply an adoption of the Commission's own rule, enacted after this court has accepted the Commission's interpretation thereof.
It must be held, therefore, that the Commission is without authority to conduct a hearing on the question of whether "usual and customary telephone service" should be discontinued on account of an alleged unlawful use; and the decree requiring the Commission to hold such a hearing was error. After an actual discontinuance of service, the jurisdiction of the Commission may, of course, be invoked to obtain reinstatement of service upon a showing that "said party is entitled to said facilities and service, and that the same will not be used in the future for unlawful purposes". Section 365.08, supra.
It appears to be admitted that the complaint filed in the court below to enjoin the disconnecting of the plaintiff's telephone service was sufficient to invoke the jurisdiction of the equity court and to authorize the issuance of a temporary injunction. Having taken cognizance of the matter, the equity court should retain jurisdiction of the cause and proceed to a final disposition thereof.
For the reasons stated, the order of the lower court is quashed insofar as it directs the Commission to conduct a hearing on the question of whether the plaintiff's telephone service should be discontinued.
It is so ordered.
SEBRING, C.J., and TERRELL and HOBSON, JJ., concur.