MATHEWS, Justice.
In this case the petitioner filed a bill of complaint in the Circuit Court of Leon County against Clarence M. Gay, as Comptroller of the State of Florida, and also against Clarence M. Gay, Comptroller, Richard W. Ervin, Attorney General, and J. Edwin Larson, Treasurer, of the State of Florida, as and constituting the Railroad Assessment Board. The principal complaint presented by the petitioner is that the proceedings followed by the Comptroller and Railroad Assessment Board denied to petitioner due process of law under State and Federal Constitutions because when it was given an opportunity to be heard before the Railroad Assessment Board, after notice required by law, such Board did not disclose the evidence or reasons upon which the assessment was based, or “the best information” they could .obtain, or submit themselves for examination or cross-examination at such hearing.
Being dissatisfied with the proceedings, the petitioner filed a bill of complaint in the Circuit Court of Leon County. A motion to dismiss as to the Railroad Assessment Board and the members thereof was granted but denied as to the Comptroller, by an interlocutory order of the Circuit Judge. Petition for writ of certiorari was filed to review that interlocutory order. As a part of the interlocutory order the Chancellor incorporated an opinion. In this case we are favored with an opinion by an able and experienced Circuit Judge which shows an intensive study of the case and a clear understanding of the questions involved. It is difficult to discuss this case without paraphrasing portions of the opinion by the Chancellor. Instead of so doing, we quote with approval the portions of the opinion which are pertinent to the questions under consideration.
“Plaintiff, a ‘railroad company’ within the terms of Section 195.01, Florida Statutes [F.S.A.], duly filed a return of its real and tangible personal property for taxation for the year 1953. Before taking formal action on this return, the Comptroller, by registered mail under date of May 22, 1953, requested Plaintiff to be present at a meeting in Tallahassee on June 8 to consider the-valuation of the Plaintiff’s property. At this meeting the Comptroller announced that he had ‘assessed’ plaintiff’s property at a figure much higher than that shown by Plaintiff’s return. Plaintiff did not agree to-this valuation.
“Subsequently, on June 22, 1953, the Comptroller gave plaintiff formal notice-that the return was not accepted and advised plaintiff that on July 8, 1953, at a designated time and place, the Comptroller, the Attorney General, and State Treasurer (who will hereinafter be referred to as the Railroad Assessment Board) would conduct a hearing for the purpose of placing valuations on plaintiff’s property.
“At this hearing no formal evidence of the value of plaintiff’s property was presented by the Comptroller or the Railroad Assessment Board. Plaintiff filed in evidence copies of plaintiff’s 1953 tax return, the Comptroller’s letter of June 22, above mentioned, and other documents showing that the Comptroller had accepted plaintiff’s 1952 tax return which showed a valuation of plaintiff’s property at a figure quite close to, but slightly less than, plaintiff’s 1953 tax return.
“At a meeting on July 13, 1953, the Railroad Assessment Board by resolution valued plaintiff’s property at a figure identical with that announced by the Comptroller at the meeting on June 8, but did not specify the value thereof in each County. Subsequently the Comptroller apportioned this aggregate valuation among the thirty-eight (38) counties into or through which the lines of the plaintiff run.
“Plaintiff vigorously attacks the procedure followed by the several officials above named in the assessment of its property. Before taking up the details of plaintiff’s contentions, reference is made to the discussion of the functioning of the Railroad Assessment Board, as outlined by Mr. Justice Ellis, late of the Supreme Court of Florida, in the case of State [ex rel. Woodward] v. Lee, [114 Fla. 855], 155 So. 138. *571 While much that is said in this opinion may be obiter dictum, it is the expression, of an able jurist, who was also an experienced public officer who served for many years as a member of the Railroad Assessment Board.
“The fact that the Comptroller, before referring the matter to the Railroad Assessment Board invited a conference with plaintiff, and there expressed an opinion as to the value of plaintiff’s property, and the fact that the Railroad Assessment Board subsequently adopted this exact figure as its assessment of the property in no way affects the validity of the assessment. The Comptroller could not properly exercise his duty to determine whether or not Plaintiff’s valuation of its property as disclosed by its tax return was ‘complete and correct’ without determining, to some degree at least, what was the ‘complete and correct’ value of this property. In the practical operation of the State Government, the actual apprisal and valuation of railroad property for taxation must be made by subordinates acting under the authority of, and subject to the approval of, the officials who are by law responsible for the proper assessment of this property. It was the duty of the Comptroller to know the value of plaintiff’s property before determining whether or not he should approve plaintiff’s tax return. The fact that he invited plaintiff to a conference and there expressed his opinion as to the true value of plaintiff’s property in an effort to secure plaintiff’s agreement to this valuation before referring the matter to the Railroad Assessment Board, is evidence of unfounded optimism on his part, but does not in any way affect the legality of an assessment later made by the Board. His statement at this conference that he had ‘assessed’ plaintiff’s property at a stated valuation is wholly immaterial. No effort is being made to collect any taxes based upon an assessment made by the Comptroller. The Comptroller had no authority to make an assessment.
“The fact that the actual assessment subsequently made by the Railroad Assessment Board is identical with the figure mentioned by the Comptroller in his conference with the plaintiff on June 8, leads to the conclusion that an appraisal, for taxing purposes, had been made by employees of the Comptroller or the Railroad Assessment Board, .that the Comptroller, in rejecting the plaintiff’s valuation of its property accepted this appraisal, and that the entire Railroad Assessment Board subsequently accepted this appraisal.
“Plaintiff takes the position that it is the duty of the Railroad Assessment Board to sit as a fact-finding tribunal, have brought before* it all evidence upon which it intends to rely in making an assessment, give the railroad the opportunity to present any evidence that it cares to produce, and then, based solely i$on the evidence so presented, make a finding as to the value of the railroad’s property and assess it accordingly. It says that otherwise it is denied due process of law. With this argument the Court cannot agree.
“The Statute directs that the assessment be made ‘from the best information they can obtain.’ In State [ex rel. Woodward] v. Lee, supra, it is indicated that the Administrative officers and the Legislature have endorsed a practice whereby the Railroad Assessment Board relies largely upon the judgment of employees in making its assessments. In that opinion the Supreme Court approved the practice. The duty to assess ‘from the best information they can obtain’ does not limit the Board to a consideration of evidence brought before it at a formal hearing.
“Nor does the Statute deprive plaintiff of its property without due process of law. The Statute requires notice to the railroad before the Board makes a final determination of the assessment, and requires that- the railroad be given an opportunity to be heard. Such notice was given the plaintiff and plaintiff exercised its right to be heard. The assessment of property by an administrative officer is the *572 performance of an administrative duty, and contemplates that the officer bring to hear upon the problem an informed judgment of his own. It thus differs materially from a judicial proceeding in which a Court weighs the evidence before it and determines facts based upon the weight of the evidence as distinguished from the exercise of the personal or individual judgment of the Court. A tax assessor is the expert and makes the determination in the exercise of his expert judgment. A Court bases its decision upon the testimony of experts and, when the experts differ, determines which of them are jnost reliable.
“It might be that if the determination of the Railroad Assessment Board were final and not subject to judicial review, or if review was limited to a consideration of the evidence produced before the Board, a finding by the Board not supported by evidence produced at the hearing provided for by the Statute would violate Constitutional rights of the plaintiff. But the Constitution of Florida (Sec. 11, Article V [F.S.A.]), and the Statutes of the State (Sec. 196.01, F.S.A.), expressly confer upon the Circuit Courts, sitting in Chancery, the power to determine the validity of any assessment and give relief from invalid assessments. It has been the uniform practice in timely and appropriate proceedings to try de novo the value of the property assessed, there being a presumption, but only a presumption, in favor of the validity of the assessment. In such a proceeding every element of due process of law is accorded the taxpayer. Under these circumstances the taxpayer cannot complain of the valuation of its property in the manner followed by the Board in this case.
“It is next contended that the assessments are invalid because the Comptroller apportioned the total value fixed by the Board among the several counties and taxing districts, when, under the Statute, this is a duty that must be performed by the Board. Section 195.01 is not a model of clarity. The Railroad Assessment Board is required to make the assessment of all property of the railroad ‘specifying the value thereof in each county.’ But following this, and separated only by a comma, the Statute continues ‘and the value of the locomotives, engines, passenger, sleeping, parlor, freight, platform, construction and other cars and appurtenances shall be apportioned by the comptroller * * *.’ Reading the Statute as a whole, the Court is of the opinion that the Legislative intent was that the Railroad Assessment Board should apportion between the several counties the value of real estate, tracks, roadbeds, etc., and the Comptroller should apportion the value of personal property. Consequently, if the allegations of the complaint are true there has been a failure in this respect to follow the letter of the law, and if the plaintiff has been injured it may seek relief. In its present form the complaint shows no such injury. The total valuation of the property was fixed by the proper authority. Unless it is made to appear that by reason of variations in local millage rates, or other reasons not disclosed by the record, the allocation as made by the Comptroller will adversely affect plaintiff’s tax liability the performance of this largely ministerial act by the Comptroller, instead of the Board, would be a harmless irregularity.
******
“ * * * The remedy of the plaintiff is to have the Comptroller enjoined from collection, in his capacity as comptroller, the amount of the tax which is excessive and illegal. It follows that the Motion to Dismiss, as addressed to the bill by the Comptroller, Attorney General and State Treasurer, as assessing officers, should be sustained, but insofar as the motion is addressed to the bill as one seeking an injunction against the Comptroller from collection taxes based upon warrants issued by local tax collectors, the motion should be denied. * * * ”
Because the statute requires that five days notice be given of a hearing to the railroad company, it insists that the language should be so interpreted or construed that such hearing is for the purpose *573 of requiring the members of the Railroad Assessment Board to give evidence and submit themselves to cross-examination concerning the basis for the assessment of the property. The statute is not susceptible of any such interpretation. The hearing is for the benefit of the railroad company so that it may present evidence and so that it may be heard. It is not for the purpose of requiring the Railroad Assessment Board, or its members, to be heard. The statute requires the assessment to be made from the “best information they can obtain”. There is no requirement that such Board, or the members thereof, shall be heard or give any evidence or any details of the best information they can obtain.
This Court has uniformly held that a County Tax Assessor is accorded wide discretion in the valuation of property for purposes of taxation. German-American Lumber Co. v. Barbee, 59 Fla. 493, 52 So. 292; Wade v. Murrhee, 75 Fla. 494, 78 So. 536; City of Tampa v. Palmer, 89 Fla. 514, 105 So. 115.
We have also held that in the absence of an express provision of the statute as to the mode of ascertaining the valuation of property for purposes of taxation, it is proper for the Assessor to ascertain and assess the value by the exercise of his own independent judgment, and the valuation made by the taxpayer does not control: King v. Gwynn, 14 Fla. 32.
In assessing railroad property the Assessment Board acts in lieu of sixty-seven County Tax Assessors with reference to railroad property. The Comptroller does not make the assessment but the Assessment Board performs that duty and exercises its own independent judgment and makes the assessment from the best information they can obtain.
In the county, the Assessor of Taxes may examine the property. He may compare it with other property in the county. He may interview the citizens. He may consider its uses, location and adaptibility and any other fact bearing upon the value of the property. His assessment is reviewable for purposes of equalization by the Board of County Commissioners. It is reviewable for illegality by the Circuit Court. Any one questioning the assessment for equalization purposes or the illegality of the assessment is entitled to a hearing and may offer evidence before the Board of County Commissioners or the Circuit Court in an attempt to sustain his objections. The hearing provided for before the Board of County Commissioners, or before the Circuit Court, is a hearing for the taxpayer and not a hearing for the Tax Assessor.
It would be a new procedure to require of administrative boards that they give notice to those affected by their orders of an opportunity to be heard and then require that the administrative board or the members thereof should be subject to examination and cross-examination by those who are afforded an opportunity to be heard after such notice. The procedure authorized does not require the members of the Board to try themselves and a failure to do so is not a denial of due process to the railroad company. It has been so held in decisions of other courts. Compare Northern Pac. R. Co. v. Adams County, D.C.Wash., 1 F.Supp. 163, appeal dismissed, 9 Cir., 63 F.2d 1012; Douglas County v. State Board of Equalization & Assessment, 158 Neb. 325, 63 N.W.2d 449, 455; Bartlett Trust Co. v. Elliott, D.C., 30 F.2d 700.
In his interlocutory order the Chancellor called particular attention to the fact that Section 11, Article V of the State Constitution, expressly conferred upon Circuit Courts, sitting in chancery, power to determine the validity of any assessment and give relief from individual assessments. He took jurisdiction under this section of the Constitution and he retains jurisdiction for the purpose of determining the legality of the assessment as provided by law. It is entirely possible that when he is through with the case and enters his final decree there will be no further complaint.
*574 We find no error in the interlocutory order or decree; consequently the petition for certiorari should he denied.
ROBERTS, C. J., and TERRELL, SE-BRING and HOBSON, JJ., concur.
THOMAS, J., dissents.
DREW, J., not participating.