424 So.2d 852 (1982)
DEPARTMENT OF ADMINISTRATION and Department of Agriculture and Consumer Services, Division of Forestry, Appellants,
v.
George C. NELSON, Appellee.
George C. NELSON, Appellant,
v.
FLORIDA DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, DIVISION OF FORESTRY, Appellee.
Nos. AB-11, AB-12.
District Court of Appeal of Florida, First District.
December 8, 1982.
Rehearing Denied January 17, 1983.
*853 Samantha Boge, Asst. Gen. Counsel, Tallahassee, for Dept. of Admin., appellant/appellee.
Robert A. Chastain, Gen. Counsel, Tallahassee, for Dept. of Agriculture and Consumer Services, Div. of Forestry, appellant/appellee.
Stephen J. Keller of Patterson & Traynham, Tallahassee, for George C. Nelson, appellee/appellant.
ROBERT P. SMITH, Jr., Chief Judge.
These consolidated appeals, two of four cases decided today that are rooted in the same controversy, are from orders of the Division of Administrative Hearings. The Department of Administration (DOA) and the Division of Forestry of the Department of Agriculture and Consumer Services appeal from the hearing officer's order sustaining a challenge by George Nelson, a Division of Forestry firefighter, to DOA rules declaring a state employee ineligible for continued employment, and deeming him to have resigned, if he qualifies for another public office without his employing agency's and DOA's approval pursuant to section 110.233(4)(a), Florida Statutes (1980 Supp.). And Nelson appeals from another DOAH order rejecting his rule challenge to the effect that the Division of Forestry disapproved his candidacy for the Wakulla County School Board under personnel policies that were required to be, but were not, adopted as rules.
We find that section 110.233(4)(a) is a sufficient legislative predicate for DOA Rules 22A-7.10(4)(a) and 22A-13.04. We reverse the hearing officer's finding that the rules represent an invalid exercise of the delegated legislative power. We affirm the hearing officer's determination that the Forestry Division's policy disapproving Nelson's proposed candidacy was not invalid as an illicit rule. Thus we reject both of Nelson's rule challenges.
Since 1967 subsection (4)(a) of Florida's "Little Hatch Act"[1] has prohibited state career service employees to
[h]old, or be a candidate for, public office while in the employment of the state or take any active part in a political campaign while on duty or within any period of time during which he is expected to perform services for which he receives compensation from the state.
*854 A 1970 amendment created this exception to (4)(a)'s broad proscription:[2]
However, when authorized by his agency head and approved by the Department of Administration as involving no interest which conflicts or activity which interferes with his state employment, an employee in the career service may be a candidate for or hold local public office.
Before the 1970 legislative session, nothing in section 110.092 distinguished (4)(a) activity from other proscribed political activity, insofar as administration and enforcement were concerned. Thus, whether one's violation was running for the school board while holding a career service job that conflicted with school board meeting times, as proscribed by (4)(a), or soliciting money in exchange for one's appointments or promotions, subsection (3), the statute was administered and enforced after the fact, retrospectively, by conventional disciplinary measures. That is to say, the employing agency initiated proceedings to suspend or dismiss the offending employee, and the Career Service Commission reviewed the agency's action. Section 110.061, Fla. Stat. (1969). But in 1970 the legislature added to subsection 110.092(4)(a), and to that subsection only, this particular language:
The Department of Administration[3] shall prepare and make available to all affected personnel who make such request a definite set of rules and procedures consistent with the provisions herein.
Exercising this rulemaking authority, DOA in 1973 promulgated Rule 22A-7.10D, precursor of the rules here challenged by Nelson:
D. Failure to Resign to Run for Public Office 
An employee who becomes ineligible for continuation of employment in accordance with Section 110.092(4)(a), Florida Statutes, shall be terminated without the right of appeal to the Career Service Commission.
Fla. Admin. Code R. 22A-7.10D (eff. 7-1-73, Supp. No. 33).
As elaborated by 1980 amendments, DOA's rules in chapter 22A-7, dealing with "Appointments, Status, Transfers, Separations and Layoffs," and Chapter 22A-13, "Political Activities, Unlawful Acts, and Penalties," implement the statutory restrictions on political activities by state employees. In Rule 22A-7.10, pertaining to "Separations," subsection (4) provides:
(4) Unauthorized Seeking or Holding of Public Office 
(a) An employee who seeks or holds office contrary to or without complying with the provisions of Section 110.233(4), Florida Statutes, shall be presumed to have become ineligible for continuation of employment and shall be deemed to have resigned from the Career Service without the right to appeal to the Career Service Commission.
(b) [provides for agency or DOA review pursuant to Section 120.57 processes, detailed in Chapter 22A-13, of free-form agency or DOA denial of authorization for local candidacies].
And DOA's Rule 22A-13.04, specifying "Penalties" for unauthorized political activities, provides:
An employee who qualifies as a candidate for or holds public office without obtaining prior approval according to this chapter shall be ineligible for continued state employment and shall be deemed to have resigned without right to appeal to the *855 Career Service Commission. In addition, the employee may be subject to penalties set forth in Section 110.127, Florida Statutes.
The hearing officer declared the quoted rules an invalid exercise of delegated legislative authority, section 120.56, Florida Statutes (1979), because the automatic resignation provision "runs contrary to the spirit and purpose of the Career Service System in the State of Florida," section 110.301 et seq., Florida Statutes (1979). Specifically, the hearing officer stated, the "de novo fact-finding hearing" secured to discharged employees before the Career Service Commission, section 110.309(1), is "the due process hearing" that DOA's rules may not lawfully disturb; DOA rules may not lawfully displace Career Service standards for discharge on grounds of "insubordination, willful violation of the provisions of law or agency rules, conduct unbecoming a public employee, [and] misconduct ...," section 110.227(1); and DOA rules may not lawfully supplant Commission authority to reduce an agency dismissal to a suspension if the Commission thinks the infraction "did not justify the severity of the action taken" by the employing agency. Section 110.309(4), Fla. Stat. (1979). The hearing officer's order states:
Relief sought before the Career Service Commission is exclusive absent some alternative procedure through a collective bargaining agreement and in that instance the affected employee may pursue this alternative form of relief. See Subsection 110.305(5), Florida Statutes. There is no concurrent or exclusive jurisdiction with the State of Florida, Department of Administration, to cause the termination or dismissal of a permanent status Career Service employee premised upon that employee's violation of the statute and rules dealing with offering himself as a candidate for office or holding that office as a local public official.
This controversy arose when George Nelson, employed in permanent status as a firefighter for the Division of Forestry, sent a letter to his supervisor on July 14, 1980, stating that he intended to run for the Wakulla County School Board. Nelson's letter stated that he had read and understood the applicable rules. He requested that the Division authorize his candidacy before July 22, the last day to qualify.
Because of the short notice given by Nelson, Division officials orally denied his request on July 18 and again on July 21. Nelson nevertheless took a qualifying loyalty oath and made a statement of his candidacy on July 22, 1980. On July 24, Nelson's supervisor again denied Nelson permission to be a candidate, this time by written memorandum, and attached a copy of another memorandum by the Division head stating that Nelson's candidacy should be disapproved because of potential scheduling conflicts between Nelson's state job as a forest ranger and the duties of a school board member, and because controversies in local government could adversely affect the Division's ability to carry out its duties.
In the following weeks, Nelson met several times with Forestry officials and their superiors in the Department of Agriculture and Consumer Services, who sought to dissuade Nelson from his candidacy because his only alternative was resignation without right of appeal. Nelson refused to withdraw, arguing that there was no conflict of interest. On August 12, the Department's chief of personnel management sent Nelson a letter stating that under section 110.233(4)(a) and Rule 22A-13.04, Nelson was deemed to have resigned on August 15 without right of appeal to the Career Service Commission because he qualified for office without the necessary prior approval. The letter pointed out that Nelson could request section 120.57 proceedings on the Department's decision not to approve Nelson's candidacy. See Rule 22A-7.10(4)(b), referenced above.
We disagree with the hearing officer's judgment that the DOA rules applicable here are invalid. The apparent premise of his order is that the Career Service statutes, and the procedures they ordinarily require, are in Florida "the due process" standard by which these rules must be measured. *856 We cannot accept that premise, for due process constraints may be observed in a variety of notice and hearing methods. Automatic termination of an objecting employee, with due process review by the employing agency or by DOA, is a legitimate legislative choice, and both this Court and the Supreme Court have sustained a DOA rule, promulgated with proper legislative authority, having that effect. In Cook v. Division of Personnel, Department of Administration, 356 So.2d 356, 358 (Fla. 1st DCA 1978), this Court sustained against a like challenge another section of DOA Rule 22A-7, to the effect that "absence without authorized leave for three consecutive days" is to be deemed a formal resignation without recourse to the Career Service Commission. In a case decided while the Nelson appeals were pending here, the Supreme Court approved this qualification of Career Service Commission review powers in Hadley v. Department of Administration, 411 So.2d 184 (Fla. 1982).
It is possible, of course, to cite differences between DOA's Rule 22A-7.10B, upheld in Cook, and the companion rules before us today. The Cook rule, presuming abandonment of and resignation from career service employment by virtue of three days' consecutive absence without leave, rested on the very practical consideration that "some term of absence" must in the day-to-day operations of an agency be "construed as a resignation." Cook, 356 So.2d at 358. It may therefore be suggested that the Cook rule is simply a housekeeping measure, intended to clear off the public roster those who without formally resigning "leave abruptly or simply fail to show up for work" and are never heard of again. Id. But that distinction misses the point that the Cook rule operates against those who protest, as did Cook and Hadley, as well as against those who do not.
The rules before us now, like DOA's rule presuming resignation from three days' absence, protect the protesting employee through notice and hearing processes that are no less effective, and no less satisfactory by due process standards, than a de novo hearing before the Career Service Commission. Thus Cook found:
As provided by the Rule, the State Personnel Director held a hearing and ruled that Petitioner had abandoned her position and was no longer an employee of the Department. 356 So.2d at 357.
The Supreme Court in Hadley, 411 So.2d at 186, approved this alternative method of review by due process standards:
Petitioner argues that the due process clauses of the United States and Florida constitutions require that a career service employee found to have "abandoned" his job pursuant to Rule 22A-7.10(2)(a), be given a hearing before the [career service] commission. We do not agree, however, that petitioner's due process rights were violated, and are of the opinion that the procedures followed herein, which were those established by the rules, provide adequate safeguards for one in his situation.
Similarly, DOA's Rule 22A-7.10(4)(b) afforded Nelson a section 120.57 hearing to review either the agency's disapproval, or DOA's disapproval, of his request for authorization to become a candidate for the Wakulla County School Board.[4]
*857 And so the question here is not whether the legislature may constitutionally authorize procedures for terminating employees other than by "de novo fact-finding hearing" before the Career Service Commission, section 110.309(1). Obviously the legislature may do so; obviously, as Hadley and Cook attest, it has done so. Rather the question is whether the legislature, after forbidding employees to become candidates for or hold other public office without DOA authorization, in fact delegated to the responsible agency, DOA, power to specify termination procedures affording a fair hearing but without recourse to the Career Service Commission.
Seen in this light, and with appropriate deference to DOA's interpretative powers as the agency to whom the legislature committed implementation of section 110.233(4)(a), the challenged rules must be judged a lawful exercise of the legislatively delegated authority. Several considerations impel us to this view:
First and foremost, the 1970 legislature took pains to substitute, for the Career Service Commission's case-by-case method of defining (4)(a) violations and their consequences, "a definite set of rules and procedures consistent with the provisions" of section 110.233(4)(a), to be promulgated by DOA. The legislature thus distinguished (4)(a) from all other subsections of the "Little Hatch Act" whose meaning, application, and enforcement were left with ultimate review authority in the Commission. The reason for that distinctive treatment of (4)(a) is not difficult to imagine. The legislature, already having promoted uniformity by requiring DOA approval, in addition to the employing agency's approval, of an employee's local candidacy, intended that the application and enforcement of the statute should be made "definite," and that DOA, not the Career Service Commission, should accomplish that.
That too is understandable. The language of (4)(a) prohibits readily identifiable conduct in explicit terms, in contrast to other subsections' more general proscriptions, which were left to case-by-case review by a Commission having power to vary the consequences with the perceived seriousness of the conduct. The legislature deemed "a definite set of rules and procedures" enforcing (4)(a) not only desirable but possible of achievement. In that assessment the legislature was correct: DOA's challenged rules are notice to career service employees that seeking public office without agency and DOA approval is fatal to one's job status, fatal without exception, through presumed resignation. While less draconian measures might have been adopted to implement the statute, the one adopted swiftly and surely executes the legislative purpose, and nothing in the statute suggests that DOA's "definite set of rules and procedures" must necessarily have included Career Service Commission review.
Second, the legislature's (4)(a) mandate that DOA provide "a definite set of rules and procedures" presented DOA with a choice between two possible avenues. Should the critical review process, examining the employee's candidacy in light of his other state duties, take place before or after the employee has become a candidate? The Career Service Commission, by design and necessity, operates retrospectively in assessing objectionable employee conduct, for pursuant to section 110.227(5)(a), Florida Statutes (1979), it reviews agency disciplinary action by such standards as

*858 negligence, inefficiency or inability to perform assigned duties, insubordination, willful violation of the provisions of law or agency rules, conduct unbecoming a public employee, misconduct, habitual drug abuse, or conviction of any crime involving moral turpitude. Section 110.227(1), Fla. Stat. (1979).
DOA, on the other hand, determined that the critical issue arising under section 110.233(4)(a)  whether an employee's candidacy or holding of local public office involves an "interest which conflicts or activity which interferes" with state employment  should if possible be determined prospectively.
DOA's choice has obvious benefits to an employee mulling public office, who is given an opportunity to determine the propriety of his intended action without risking irrevocable harm. DOA could reasonably have considered this to have been the process preferred by the statute itself, requiring DOA to "make available to all affected personnel who make such request" a "definite set of rules and procedures." Knowing the rules and procedures, knowing the consequences of unauthorized candidacies, and knowing the risks of qualifying without first prevailing in section 120.57 proceedings to secure authorization, is of great value prospectively, less so retrospectively. Thus the rules provide prospectively affected employees their clear point of entry to section 120.57 procedures, supra note 4, even if, as is the case here, those proceedings cannot be completed by the candidate's qualifying deadline.
Third, DOA could properly have considered that Career Service Commission review would be redundant if not seriously disruptive of the "definite" scheme required by the legislature in (4)(a). The critical issue under (4)(a) is whether a conflict exists between the employee's job and his candidacy such that permission to run for or hold the other office should be denied. For sound reasons stated above, DOA's rules determine that question prospectively if possible. On that issue, then, retrospective Career Service Commission review, in de novo proceedings for suspension or dismissal, would either redundantly endorse the agency's and DOA's decision or would install the Commission in DOA's place as the statewide authority for determining the propriety of candidacies, and the consequences to offending employees. Plainly, that would be contrary to the terms of (4)(a), inimical to agency control over the qualifications of its own employees, and contradictory of DOA's identity as the agency chiefly responsible for the qualifications of personnel. Section 20.31(2)(b), Fla. Stat. (1979). If the Commission's retrospective determination of the most critical issue should become decisive, then employees will be encouraged to disregard prior agency or DOA action, and DOA's "definite set of rules and procedures," mandated by (4)(a), will have been replaced by uncertain predictions of Commission action.
Fourth, we have repeatedly held that when the agency committed with statutory authority to implement a statute has construed the statute in a permissible way under APA disciplines, that interpretation will be sustained though another interpretation may be possible. When the agency so interprets the statute through rulemaking, the presumption of correctness is stronger. And when as here the agency's interpretation of the statute through rulemaking has been on the books for several years without legislative correction, in this case since 1972, the presumption is stronger still. The principle of King v. Seamon, 59 So.2d 859, 861 (Fla. 1952), thus gains new vitality through APA processes. Florida Commission on Human Relations v. Human Development Center, 413 So.2d 1251, 1254 (Fla. 1st DCA 1982); State Department of Health & Rehabilitative Services v. Framat Realty Inc., 407 So.2d 238, 242 (Fla. 1st DCA 1981); ABC Liquors, Inc. v. Department of Business Regulation, 397 So.2d 696, 697 (Fla. 1st DCA 1981); Agrico Chemical Co. v. State Department of Environmental Regulation, 365 So.2d 759, 762 (Fla. 1st DCA 1978), cert. denied, 376 So.2d 74 (Fla. 1979); Florida Beverage Corp. v. Wynne, 306 So.2d 200, 202 (Fla. 1st DCA 1975).
*859 The hearing officer's error in invalidating Rules 22A-7.10(4)(a) and 22A-13.04 seems attributable to two factors, the first of which, as we have said, was treating the Career Service Commission statute as equivalent to the due process clauses of the United States and Florida Constitutions. Thus the hearing officer stated that the challenged rules are "contrary to the spirit and purpose of the Career Service System in the State of Florida" and that
permanent status employees in the Career Service System may only be suspended or dismissed for cause and cause shall include claims of insubordination, or willful violation of the provisions of law or agency rules.
.....
The Department of Administration, while it may establish the rules and procedures for this suspension or dismissal of the employees, it may not disturb the due process hearing ... (emphasis added)
As the Supreme Court held in Hadley, due process may be afforded by means other than review by the Career Service Commission. Plainly, due process is afforded by the section 120.57 proceedings and judicial review offered by DOA's rules to determine, prospectively if possible, whether authorization should be given for an employee's desired candidacy. See supra note 4.
The hearing officer was further misled by his misconception that hearings under the challenged rules are of use only to
those persons who have voluntarily submitted themselves to the process of review after being denied their opportunity to run for public office or holding public office. (emphasis added).
DOA's rule process is of no use, the hearing officer suggested, "once an employee has violated" the statute by becoming a candidate without agency and DOA authorization. That person's proper recourse, the hearing officer states, is Career Service Commission review of his dismissal under section 110.309. The implications of the hearing officer's analysis is that an employee who "voluntarily submits" his request to the agency and DOA must perhaps accept their decision, but one who becomes a candidate without "voluntarily submitting" to the prescribed process may have the whole matter reviewed later by the Commission.
On the contrary, we think, the statute flatly prohibits unauthorized candidacies and mandates a "definite set of rules and procedures" for authorizing candidacies. DOA's rules provide, and were required by statute to provide, the clear and only point of entry to proceedings for determining the critical point in issue, whether authorization to run should be given. See Capeletti Bros. v. State Department of Transportation, 362 So.2d 346 (Fla. 1st DCA 1978), cert. denied, 368 So.2d 1374 (Fla. 1979).
The hearing officer correctly points out that DOA's rules, envisioning as they do prospective decisions by the agency and DOA allowing an employee to run for or accept public office, do not in terms provide a forum for determining the potential issue of whether the employee having been denied authorization to become a candidate, nevertheless did so. If that is a disputed fact (it is not disputed by Nelson), we know of no reason why agency section 120.57 processes, subject to section 120.68 judicial review, cannot fairly determine the issue in determining the substantial interest of the employee.
Accordingly, we uphold Rules 22A-7.10(4)(a) and 22A-13.04 as having been promulgated by DOA in the lawful exercise of delegated legislative authority.
Using DOA's appeal as a vehicle to present to us a related constitutional question that the hearing officer had no authority to decide, Nelson argues that the statute itself, section 110.233(4)(a), unconstitutionally delegates the legislative authority without adequate standards for its exercise. See Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978). We find, on the contrary, that the statute sufficiently guides DOA and employing agencies in determining whether to authorize local candidacies. Authorization is to be granted or withheld depending on whether the employee's campaign or holding of public office involves an *860 "interest which conflicts" or "activity which interferes" with his state employment. Those terms are subject to common understanding and, given the variety of situations in which the legislature expected the terms to be applied, need not have been further defined in the statute. See League of Mercy Association v. Walt, 376 So.2d 892, 893 (Fla. 1st DCA 1979), cert. denied, 386 So.2d 639 (Fla. 1980).
Finally, Nelson argues on his consolidated appeal that the Forestry Division had and enforced against him an illicit rule, which is to say a firm policy not promulgated by rule, against employee candidacies. The hearing officer's order convincingly characterizes the evidence to the contrary. See Anheuser-Busch, Inc. v. Department of Business Regulation, 393 So.2d 1177 (Fla. 1st DCA 1981); McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977).
The order in No. AB-11, declaring DOA's rules invalid, is REVERSED. The order in No. AB-12, rejecting Nelson's challenge to policy not promulgated as rules, is AFFIRMED.
JOANOS and THOMPSON, JJ., concur.
NOTES
[1] Section 110.092, Fla. Stat. (1967); section 110.233, Fla. Stat. (1980 Supp.).
[2] Ch. 70-277, § 1, Laws of Fla.; section 110.233(4)(a), Fla. Stat. (1980 Supp.). As amended in 1970, the statute required concurrent approval of the agency head and the Division of Personnel and Retirement of the Department of Administration. Subsequently the name of the Division was changed and, by chapter 79-190, reference to the Division was replaced by a general reference to the Department of Administration. The statute was renumbered § 110.233(4)(a) by reviser in 1979. A further 1980 amendment, not pertinent here, eased the proscription to allow a career service employee to serve as a member of a county or state executive committee of a political party. Ch. 80-207, § 2, Laws of Fla.
[3] Ch. 70-277, § 1, Laws of Fla. Again, the 1970 reference was to the Division of Personnel of the Department of Administration. See n. 2.
[4] DOA's Rule 22A-13.032, Fla. Admin. Code, provides:

(1) If the agency head denies an employee's request submitted in accordance with this chapter, the employee shall have the right to a Section 120.57, Florida Statutes, proceeding before the agency head or his/her designate. A request for hearing pursuant to this section shall be filed with the agency head within 20 days from the date the employee receives notice of the decision to deny approval of his/her request to campaign for or hold a local public office.
(2) If the Department of Administration disapproves an employee's request pursuant to this chapter, the employee shall have the right to a Section 120.57, Florida Statutes, proceeding before the Secretary of Administration or his/her designate. A request for hearing pursuant to this section shall be filed with the Secretary of Administration within 20 days from the date the employee receives notice of the Department's decision to deny approval of his/her request to campaign for or hold a local public office.
(3) In proceedings pursuant to this section, the employee shall bear the burden of establishing that his/her candidacy or the duties of the local public office will not involve a conflict of interest or interfere with his/her state employment. If the agency head or Secretary of Administration determines that approval was withheld unreasonably by the agency or Department, respectively, the employee may become a candidate for the requested local public office or continue to hold the local public office without terminating his/her state employment.
(4) An agency or an employee who is adversely affected by final agency action, shall be entitled to judicial review pursuant to Section 120.68, Florida Statutes. The employee shall not have the right to appeal such action to the Career Service Commission.