THOMPSON, Judge.
Idle Assets, Inc. appeals from a declaratory statement of the Insurance Commissioner finding its investment plan to be in violation of §§ 626.112(1), .051, Fla.Stat., and administrative rules governing the insurance business. We affirm.
Idle Assets, Inc. offers a plan through which owners of small whole life insurance policies can profit from the investment of the accrued cash value of their policies in certificates of deposit (CDs). The plan operates through lending institutions (banks) which encourage customers to borrow the cash value of their whole life policies paying the low interest rate specified in the policies and to reinvest the proceeds in CDs sold by the bank which pay a higher interest rate. The plan’s attractiveness to owners of whole life policies is enhanced by the plan’s provision for group term life insurance in an amount equal to the policy loan for each individual who participates in the plan. The customer would therefore continue to have life insurance protection in the full face amount of the whole life policy although the value of the whole life policy has been diminished by the borrowing. The owner of the group term policy is the Idle Assets’ Trust, which pays the premium on the term insurance with monies received from the participating banks. No specific identifiable charge is made to the customer for the term insurance. However, the Idle Assets’ CDs earn a slightly lower rate of interest than banks ordinarily pay on CDs and which an individual, who is not a member of the plan, could obtain by the investment of his or her cash value. The plan therefore does involve a cost to participants to that extent.
Idle Assets, Inc. enrolls banks in its program by persuading the banks that their participation in the plan will cause them to receive large amounts of new, long-term deposits through the sale of 30-month Idle Assets’ CDs. Idle Assets, Inc. provides the banks with forms and brochures necessary to advertise and administer the program, and sends a representative to the bank to train a bank employee to act as the bank’s in-house administrator of the plan. It also provides a Dale Carnegie course for bank employees, who then attempt to “sell” bank customers on the advantages of participate ing in the plan. The training provided for the bank’s in-house administrator consists primarily of teaching him or her to compute the cash value of whole life insurance policies. Presumably the training is provided so that the bankers can make a tentative determination as to whether the cash value of the customer’s policy exceeds the $1,000 minimum needed to purchase an Idle Assets’ CD.
A bank customer who decides to join the plan executes an application card for the term life insurance and a limited assignment of the whole life policy to the bank. On the basis of the assignment the bank applies for and obtains directly from the insurance company the loan of the policy’s cash value. When the loan proceeds are received by the bank, it issues an Idle Assets’ CD in an amount equal to the amount of the loan. At the same time the bank forwards the application for the term insurance to the Idle Assets’ Trust which returns the certificate of insurance to the customer. Although the bank does solicit and transmit the application for the term insurance, it receives no commission on the sale of the insurance. The only way the bank profits by participating in the plan is through the receipt of new long-term deposits. The profits of Idle Assets, Inc. are derived from the service fees it charges the bank for administering the program.
*904 Idle Assets, Inc. petitioned the Department of Insurance for a declaratory statement that its plan did not violate certain Florida statutes and rules pertaining to the insurance business. In his recommended order, the hearing officer found that the Idle Assets plan was in violation of certain statutes and regulations, most notably §§ 626.112(1), .051, Fla.Stat. The Insurance Commissioner adopted the recommendations of the hearing officer and issued his declaratory statement finding that the plan of Idle Assets, Inc. would violate certain laws and rules, including §§ 626.-112(1), .051, Fla.Stat.
Section 626.112(1) prohibits unlicensed persons from acting as insurance agents. Section 626.051 provides in part:
(2) [N]o person shall, unless licensed therefor as an agent:
(a) Solicit insurance or annuities or procure applications therefor; or
(b) In this state engage or hold himself out as engaging in the business of analyzing or abstracting insurance policies or of counseling or advising or giving opinions to persons relative to insurance or insurance contracts....
There is competent substantial evidence to support the findings of the hearing officer and the Insurance Commissioner that the execution of the plan by the banks and Idle Assets, Inc. violates the laws and rules which prohibit a person unlicensed as insurance agent from engaging in the business of analyzing or abstracting insurance policies or of counseling or advising or giving opinions to persons relative to insurance or insurance contracts. The construction placed on a statute by officials charged with the duty of executing it should not be disregarded or overturned by an appellate court except for the most cogent reasons and unless clearly erroneous. King v. Seamon, 59 So.2d 859 (Fla.1952); ABC Liquor Stores, Inc. v. Department of Business Regulation, 397 So.2d 696 (Fla. 1st DCA 1981). The plan contemplates that bank employees that are not licensed as insurance agents will review insurance policies of customers, actively encourage them to borrow the cash value of their life insurance policies, take an assignment of the policy for this purpose, invest the loan proceeds obtained in CDs yielding a lower than normal rate of interest, and replace the insurance coverage lost with term insurance, the application for which they take from the customer. The Insurance Commissioner’s determination that such activity would violate the statutes prohibiting persons unlicensed as insurance agents from “... counseling or advising or giving opinions to persons relative to insurance or insurance contracts ...” is not clearly erroneous.
The declaratory statement of the Insurance Commissioner is AFFIRMED.
WENTWORTH, J., concurs.
BOOTH, J., dissents.