83 So.2d 865 (1955)
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Joe H. Adams, as Florida State Hotel Commissioner, and Richard W. Ervin, as Attorney General of the State of Florida, Appellants,
v.
NINETEEN HUNDRED ONE COLLINS CORPORATION, a Florida corporation, Appellee.
Supreme Court of Florida. En Banc.
November 2, 1955.
Rehearing Denied January 6, 1956.
*866 Richard W. Ervin, Atty. Gen., George E. Owen and John C. Reed, Asst. Attys. Gen., for appellants.
Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, E.W. Smith, John A. Boykin, Jr., and Graham W. George, Atlanta, Ga., for Southern Bell Tel. & Tel. Co.
Burnett Roth, Miami Beach, for appellee.
THORNAL, Justice.
The appellants here were defendants in the Circuit Court in a chancery proceeding instituted by the appellee seeking an injunction against the enforcement of Chapter 365, Florida Statutes 1953, F.S.A., and Section 561.291, Florida Statutes, F.S.A. From a decree of the Chancellor declaring the cited statutes to be unconstitutional, this appeal was perfected.
Chapter 365, F.S., F.S.A., is the so-called "anti-bookie law" aimed at the control of bookmaking and other illegal gambling through the use of telephone, telegraph and other wire services. Section 561.291, F.S., F.S.A., is an act of the 1951 Legislature authorizing the revocation of a beverage or hotel license upon the removal or termination of communication facilities when the same have been used for illegal gambling. In the instant case the Attorney General of Florida on March 12, 1954, notified appellant, *867 Southern Bell Telephone and Telegraph Company, that the "customary telephone service" furnished by it to the Shore Club Hotel, operated by appellee, was being "used in violation of the laws of Florida, particularly the gambling laws". Thereupon the telephone company advised the hotel that it would terminate its customary telephone service on March 17, 1954, as required by Chapter 365, supra.
Before the telephone service was actually terminated, the appellee corporation instituted this proceeding by a complaint in equity seeking a temporary injunction and ultimately a permanent injunction against discontinuance of its customary telephone service. The complaint, with various amendments, alleged that telephones were not being used in violation of the gambling laws; that the appellee operated the hotel under a 99-year lease which was a valuable property right; that a hotel could not remain in operation without customary telephone service; that if its telephone service were terminated, its license to operate a hotel would be canceled under Section 561.291, supra; that there was a provision in the lease for cancellation thereof by the lessor in the event that any unlawful business should be operated on the premises; and that the lessee was then preparing to borrow money to finance extensive improvements in the hotel facilities and that such financing would be prevented by the termination of its telephone service. The proposed action of the telephone company was attacked on the basic ground that the telephones were not being illegally used and on the further grounds that Chapter 365, supra, violates the due process requirements of Sections 1 and 12 of the Declaration of Rights of the Florida Constitution, F.S.A., and the equal protection requirements of Amendment XIV to the Constitution of the United States in that it discriminates between "private wire services" and "customary telephone service" as to the procedure for revoking same; that the same organic provisions are violated by both Chapter 365, supra, and Section 561.291, supra, because of alleged lack of an opportunity to be heard before cancelling the telephone service or revoking the hotel license; that the title to Chapter 26820, Laws of Florida 1951, is defective in violation of Section 16, Article III, Florida Constitution, and that Chapter 365, supra, is a bill of attainder violative of both State and Federal Constitutions.
By the final decree the Chancellor concluded that Chapter 365, supra, and Section 561.291, supra, as applied to customary telephone subscribers such as the appellee violate Section 12 of the Declaration of Rights of the Florida Constitution and the Fourteenth Amendment to the Constitution of the United States because of the alleged lack of a hearing and were, therefore, invalid. The Chancellor did not pass upon the question of whether the telephones were actually being used for gambling purposes.
A permanent injunction was entered against the telephone company and the Attorney General enjoining any action "against customary telephone subscribers such as plaintiff" under Chapter 365, supra, and enjoining permanently the Florida State Hotel Commission from taking any action "against customary telephone subscribers such as plaintiff" under Section 561.291, supra.
This appeal presents the question of the correctness of the ruling of the Chancellor in holding the cited statutes to be contrary to the cited organic provisions of the State and Federal Constitutions.
After a very careful consideration of able briefs filed by the respective parties, we have concluded that the acts under attack are constitutional and that the Chancellor committed error in holding to the contrary.
Chapter 365, F.S., F.S.A. was originally enacted as Chapter 25016, Laws of Florida 1949. As so passed, this act applied in a limited sense to so-called "private wire service". By Chapter 26820, Laws of Florida 1951, the original act was amended in order to regulate so-called "customary telephone service". By Section 15 of the original act it is specifically provided that "This chapter shall be deemed an exercise of the police power of the State of Florida *868 for the protection of the public welfare, health, peace, safety and morals of the people of the State of Florida, and all of the provisions of this chapter shall be liberally construed for the accomplishment of this purpose". An identical provision is included in Section 561.291, supra, which was enacted in 1951 as Chapter 26773.
It is perfectly obvious from an examination of these statutes and their legislative history that they were leveled at the control and ultimate elimination of illegal gambling commonly known as bookmaking. By the passage of the acts, the Legislature necessarily determined that such illicit gambling constituted a vice which justified the exercise of the State's sovereign police power in the interest of the public welfare. An incidental consideration which this Court can judicially recognize is the fact that a substantial source of state income is pari-mutuel betting legitimately conducted at horse and dog race tracks and jai alai frontons. The conduct of bookmaking operations which these acts are intended to control constitute an ever-present encroachment upon this legitimate source of state revenues for the reason that the bets illicitly placed with the bookmaker do not pass through the pari-mutuel machine and the State is thereby deprived of its proper share of the revenues to be derived from pari-mutuel betting. The acts therefore constitute an exercise of the police power to protect the public against the vices of illicit gambling and to establish a safeguard around the public treasury.
Because of the fact that a decision on the constitutionality of the statutes under attack could have far-reaching public results, it appears appropriate to review in summary the several cases which have been before this Court involving these statutes.
In McInerney v. Ervin, Fla. 1950, 46 So.2d 458, 461, an attack was directed against the constitutionality of the "private wire service" provisions of Chapter 365, supra. In sustaining the act against the contention that it violated the interstate commerce provisions of the Federal Constitution, Mr. Justice Terrell, by his opinion, discussed objectives sought to be accomplished by the statute and further stated:
"* * * It is hardly necessary to point out that the legislature has power to single out, condemn and punish such acts as it deems injurious to public morals. If furnishing information about horse racing or bookmaking fall in that category, it may resort to such means as are reasonable and within constitutional limitations to suppress it. It may also employ such means and instrumentalities as are necessary to cope with and subdue any moral evil. Human ingenuity to outwit and suppress crime should certainly keep pace with the ingenuity of those who would devise and commit it.
"It follows that the legislature was well within its power in providing that contracts for private wire service under conditions stated, constitute prima facie evidence that it is used for gambling purposes. It was also within its power in imposing the burden on the contractor for the wire service to show that it was not, nor was it intended, to be used for gambling purposes. The legislature has always been permitted to impose more severe methods to suppress moral evils than it has other evils. * * *" (Emphasis ours.)
By this first opinion dealing with the questioned statute as originally written this Court recognized the broad and comprehensive expanse of the State's police power and the justifiable exercise of the power in the interest of public welfare.
Subsequently in 1950 in the case of Dade County News Dealers Supply Co. v. Florida Railroad & Public Utilities Commission, Fla., 48 So.2d 89, 91, we sustained a regulation of the Florida Railroad & Public Utilities Commission which for all practical purposes was identical with the language of Section 365.08, F.S., F.S.A., here under attack and which was added to the original act by the legislative enactment of 1951 cited above. By this decision this Court committed itself to the view that the Commission *869 rule was reasonable and enforceable and in the enforcement of the rule we clearly stated that "The Attorney General is clothed with broad power in protecting the public from crime and there must be some showing that he is acting illegally" in order to defend successfully against the enforcement of the rule. Under this rule it was provided that if customary telephone service was discontinued because of its use for gambling purposes, the subscriber to the service could appeal to the Railroad & Public Utilities Commission for a restoration of its service upon a showing that the service would not be so used illegally in the future. It was in this decision that the Court announced the proposition that "if equities are shown to be involved a court of equity would have jurisdiction" to enjoin cancellation of the service in a suit brought before the service was actually cancelled. The conclusion sustaining the rule for a hearing before the Commission after discontinuance of service upon proper showing, was grounded specifically on the further proposition that conditions might arise where a party whose service is ordered to be discontinued would be entitled to a hearing before the order is effectuated and that such showing should be based on an equitable right justifying the intervention of a court of equity to prevent irreparable damage. In this decision the Florida Court committed itself to the holding that the opportunity that is available to enter a court of equity and prevent official action which could be unjustifiably harmful, adequately preserves and gives full recognition to the organic requirements of due process.
We further point out that under this decision recognizing the jurisdiction of a court of equity under the circumstances there mentioned, it is not required that any special or peculiar equity be shown in order to sustain the jurisdiction of the Court if invoked prior to discontinuance of the service.
In Southern Bell Tel. & Tel. Co. v. State ex rel. Transradio Press Service, Fla. 1951, 53 So.2d 863, 866, an effort was made by a mandamus proceeding to compel the telephone company to install teletypewriter service and connect the service with a radio station. The telephone company defended on the ground that the Florida Railroad & Public Utilities Commission had directed it to decline the service and the Attorney General also defended on the ground that the service would be used to convey gambling information. We there held that the burden was on the press service to show that the requested special wire service would not be used for gambling purposes and that despite the fact that Chapter 365, F.S., F.S.A., places the consideration of such matters under the jurisdiction of the Railroad & Public Utilities Commission, nevertheless, "The act does not prohibit the use of appropriate remedies before the court * * *." We thereupon proceeded to dispose of the cause on the merits and refused the issuance of a peremptory writ of mandamus.
We next come to the case of King v. Seamon, Fla. 1952, 59 So.2d 859, 861. This case involved Section 365.08, F.S., F.S.A., which, as pointed out above, was enacted by the 1951 Legislature and is identical with the prior rule of the Railroad & Public Utilities Commission regulating customary telephone service which rule was sustained in Dade County News Dealers Supply Co. v. Florida Railroad & Public Utilities Commission, supra. This was a proceeding in equity to enjoin the disconnecting of customary telephone service under the provisions of the 1951 Act, the same being the act which is under attack in the case at bar. A preliminary injunction was issued prohibiting the disconnecting of the service and an order was entered by the Chancellor directing the Railroad & Public Utilities Commission to conduct a hearing as to whether telephone service should be disconnected. In an opinion by Mr. Justice Roberts we recognized the validity of Section 365.08, F.S., F.S.A., which the Chancellor in the case at bar has held to be unconstitutional, but we further held that the Railroad & Public Utilities Commission has no jurisdiction until the customary telephone service has actually been disconnected. In commenting on Dade County *870 News Dealers Supply Co. v. Florida Railroad & Public Utilities Commission, supra, we held:
"* * * It was there held that the rule was reasonable and within the authority of the Commission to adopt; that the public utility was warranted in discontinuing its telephone service when notified to do so by the Attorney General because of its use for unlawful purposes; and that, in the absence of a showing that some equitable right was being violated, the Circuit Court properly dismissed a bill to enjoin the discontinuance of service to the Dade County News Dealers Supply Company, the plaintiff therein. * * *" (Emphasis ours.)
It should be noted that in King v. Seamon, supra, this Court committed itself to the view that the previous rule of the Railroad & Public Utilities Commission, which later became and is absolutely identical with Section 365.08, F.S., F.S.A., "was reasonable and within the authority of the Commission to adopt * * *." We further again recognized that it was appropriate for the offended customary telephone service user to appeal to a court of equity to enjoin the disconnecting of his telephones if he had any equitable basis for such appeal. We, in effect, held that he could so proceed as a matter of right, not mere grace, if he moved before the service was terminated.
In Holloway v. Schott, Fla. 1953, 64 So.2d 680, 681, a Director of the State Beverage Department was proceeding to revoke a liquor license under Section 561.291, F.S., F.S.A., likewise under attack in the case at bar. This statute is applicable to the holder of a liquor license as well as to the holder of a hotel license and under the act either might have his license revoked by the Department supervising the operation of the business where it is shown the telephone service used by the business has been discontinued because of violation of the gambling laws. In an opinion by Mr. Chief Justice Drew we held that a liquor license is not property in the constitutional sense. We quoted from State ex rel. Hoffman v. Vocelle, 159 Fla. 88, 31 So.2d 52, wherein it was held:
"`It is established law that a sovereign state, when functioning under its police power, may enact such measures as are reasonably calculated to be essential or necessary in behalf of the general welfare for the control and regulation not only of the sale but the possession of intoxicating liquors. The form or method of regulation and control is one of public policy for the decision of each state, and frequently the prevailing view is reflected by appropriate legislative enactments.'"
We concluded this opinion by specifically holding that Section 561.291, F.S., F.S.A., is constitutional. We so held with the following language, to-wit:
"The Act under attack is plainly a valid and constitutional enactment and the able Chancellor below was correct in so ruling."
In converse this ruling leads us to the conclusion in the case at bar that the Chancellor below committed error in holding the same identical act to be unconstitutional.
Peters v. Southern Bell Tel. & Tel. Co., Fla. 1954, 70 So.2d 547, was another proceeding in equity brought to enjoin the telephone company from discontinuing the customary telephone service in the plaintiff's motel under the provisions of Chapter 365, F.S., F.S.A. The temporary injunction was denied and the denial was sustained by this Court on certiorari. After the denial of the temporary injunction, service was discontinued by the telephone company which thereupon filed a motion for a summary decree on the ground that upon the discontinuance of the service, jurisdiction over the matter shifted to the Railroad & Public Utilities Commission. The complaint in the injunction proceeding was amended to allege that the plaintiff had only recently acquired the motel and that he had no knowledge at all of the use of the telephone for gambling purposes. The *871 Chancellor retained jurisdiction but held that the lack of knowledge on the part of the owner was not sufficient to preclude the discontinuance of the telephone service, which admittedly had been used for gambling purposes. We held that the Chancellor properly retained jurisdiction for a full determination of the cause and correctly denied the injunction. It was in this decision that this court used the expression "special equities" as being the basis for an appeal to a Court of equity to prevent the discontinuance of customary telephone service. An analysis of the factual situation will reveal that the expression "special equities" was employed as a condition precedent to sustaining the jurisdiction of the Court in a situation where it was admitted that the telephones were being used for gambling purposes. Apparently this expression has caused some confusion in the consideration of subsequent cases involving requests for injunctions against the discontinuance of customary telephone service where there is a factual dispute as to whether the telephones are actually being used for gambling purposes and such illegal use is denied.
The summary of our previous holdings is simply that where admittedly the telephones are used for gambling purposes, some peculiar or unusual equity will be necessary in the chancery court to forestall the discontinuance of the service. On the other hand, where the use of the telephones for gambling is in dispute, then at any time before the service is discontinued a person who considers himself to be threatened by an unjustifiable discontinuance of his service may proceed in a court of equity to show such lack of justification and thereby sustain the issuance of a restraining order that will prevent the termination of his customary telephone service.
In our view and particularly because of the nature of the regulation here involved, as well as the objectives to be accomplished by the statutes involved, this privilege of going into equity meets the organic requirements of due process.
With further reference to Section 561.291, F.S., F.S.A., we should remain mindful of the fact that under the decisions of this Court the hotel business is one "affected with a public interest" which means that the operation of the business directly affects the health, safety and welfare of the people and that the public is interested to such an extent that reasonable laws can or may be enacted for the control and regulation of the particular class of business. The extent to which such a business may be properly regulated varies with different kinds of businesses. The importance of the hotel industry to the economy of the State of Florida is a matter which we judicially know. The Legislature has recognized this in many ways by the enactment of laws for the protection and regulation of the business as well as various aspects of this operation. Indeed, by the very enactment of Section 561.291, F.S., F.S.A., the Legislature in its wisdom classified the hotel business with the intoxicating beverage business as a fit subject for special regulation in the interest of controlling the operation of illicit bookmaking. This calls for a consideration of the proper exercise of the police power of the State as applied to the particular business involved.
In State ex rel. Hosack v. Yocum, 136 Fla. 246, 186 So. 448, 451, 121 A.L.R. 270, we relied upon an earlier opinion of the late Mr. Justice Whitfield for the following authoritative pronouncement on the relationship between the requirements of the organic law and the exercise of the State's sovereign police power, to-wit:
"`The provisions of the organic law that no person shall be deprived of life, liberty, or property without due process of law, nor denied the equal protection of the laws, are not intended to hamper the states in the discretionary exercise of any of their appropriate sovereign governmental powers, unless substantial private rights are arbitrarily invaded by illegal or palpably unjust, hostile and oppressive exactions, burdens, discriminations or deprivations. * * *

*872 "`Under the American System of laws and government every one is required to so use and enjoy his own rights as not to injure others in their rights or to violate any law in force for the preservation of the general welfare. This principal [sic] does not conflict with the express constitutional right that all persons have of "acquiring, possessing and protecting property." All property rights are held and enjoyed subject to the fair exercise of the state's police power to establish regulations that are reasonably necessary to secure the general welfare of the state. The selection and classification of the subjects of statutory regulation are within the lawmaking discretion of the Legislature.'"
The case last cited not only supports the conclusion that Chapter 365, F.S., F.S.A., and Section 561.291, F.S., F.S.A., are consistent with the requirements of due process but further sustains our conclusion, which we here announce, that Section 365.08, F.S., F.S.A., does not violate the Fourteenth Amendment to the Constitution of the United States with reference to preservation of equal protection of the laws. In its wisdom the Legislature has classified "private wire service" and "customary telephone service" as being subjects for regulation insofar as the enforcement of the gambling laws is concerned. We are of the view that the classification is adequately justified by the nature of the utilities involved as well as by the nature of the subject to be regulated and the types of service are sufficiently different to justify different regulations.
Our analysis of the prior decisions of this Court and the conclusions which we have here reached are further strongly supported by the decision of the United States Court of Appeals in Fay v. Miller, 87 U.S.App.D.C. 168, 183 F.2d 986, 989, wherein it was held:
"In this case, too, any constitutional objection  on the ground that official action is depriving the subscriber of substantial rights without `at some stage an opportunity for a hearing and a judicial determination' is obviated by the fact that complete relief may be obtained from the Telephone Company. The United States Attorney's `request' is translated into threatened or actual injury only when the Company acts pursuant to it. There is little doubt that such an official request effectively sets in motion a machinery for removal of the telephone. But at the point of imminent or actual removal, the subscriber may obtain a hearing on the merits of the charges against him by suing to enjoin the Company. If the Company cannot then sustain its burden of proof by mustering a preponderance of the evidence to support the charge of illegal use, an injunction will issue against it. And if it has acted only because of the United States Attorney's request, it still must justify its action by a preponderance of the evidence in order to keep the telephone disconnected.
"We are mindful of the fact that this case does not involve property rights alone, as does Larson, but concerns official action in an area close to the criminal law. It involves the indirect application of penal-like sanctions at the behest of a law-enforcement officer. If a complete remedy were not available against a third party, as here, such sanctions might be suffered without any of the traditional assurances that the fundamentals of fair play embodied in procedural due process are observed. As we have indicated, however, this case arises in a context where the subscriber is assured of his day in court by way of a suit to enjoin the Telephone Company. We do not reach the situation where an injunction suit against the officer is the only available remedy against official action which deprives, or threatens to deprive, a person of substantial rights." (Emphasis ours.)
The case last cited involved the enforcement of the regulation of a telephone company which had been approved by the *873 Maryland Public Service Commission and which for all practical purposes was very similar to the statute here under attack.
The ways and methods of those who would devise schemes to evade or violate the laws are devious. The police power is an element of sovereignty reserved by the states to enable them to cope with any malignancy that threatens the body politic. By the statutes under attack the Legislature has supplied the Attorney General, a constitutional officer, with a legal instrument which in the legislative judgment will enable him to carve out the malignant growth and thereby prevent its spread. We are not to assume that he will abuse the powers of his office. Until the contrary is shown we must assume that he will perform the duties of his office in the interest of the public good and in a fashion prescribed by the organic law and within the restrictions announced by the Courts in interpreting the law. We find nothing in this record to justify a conclusion that the constitutional rights of the appellee have been violated.
We have considered the objection to the title of Chapter 26820, Laws of Florida 1951, and find that the title meets the requirements of Section 16, Article III of the Florida Constitution. What we have heretofore said disposes of the contention that Chapter 365, supra, is a bill of attainder, adversely to appellee.
On the final contention of the appellee that Chapter 365, F.S., F.S.A., is a penal act which fails to describe the offense with sufficient definiteness, it is sufficient to say that it is our view that such offense as is defined by Chapter 365, F.S., F.S.A., is adequately delineated by the language of the act and leaves no doubt as to the offenses thereby condemned.
In conclusion we hold that Chapter 365, F.S., F.S.A., and particularly Section 365.08, F.S., F.S.A., and Section 561.291, F.S., F.S.A., are constitutional and meet all of the requirements of the organic law.
This cause having been heard by the Chancellor who had an opportunity to view all of the witnesses and consider their credibility and the weight of their testimony as given from the witness stand, and the final decree having been based entirely upon a finding that the acts in question were unconstitutional without a determination on the merits of the case itself, the final decree is hereby reversed and the cause hereby remanded to the lower Court for such further proceedings as are consistent with this opinion.
DREW, C.J., and TERRELL and THOMAS, JJ., concur.
HOBSON, ROBERTS and BUFORD, JJ., dissent.
HOBSON, Justice.
I am constrained to dissent from the majority opinion in this case. The learned chancellor who heard this cause in the circuit court rendered a final decree in which he expressed his opinion with reference to the constitutionality of Chapter 365 and Sec. 561.291, Florida Statutes, 1953, F.S.A.
I quote from the final decree:
"This suit was instituted by the plaintiff, Nineteen Hundred One Collins Corp., leasehold owners and operators of the Shore Club Hotel, to enjoin the Southern Bell Telephone and Telegraph Company from removing certain customary telephone facilities at the Shore Club Hotel under the provision of Chapter 365, Florida Statutes, 1953 [F.S.A.], and to test the constitutionality of Chapter 365 and Section 561.291, Florida Statutes 1953 [F.S.A.].
"On March 12, 1954 an Assistant Attorney General for the State of Florida wrote the Southern Bell Telephone and Telegraph Company and directed that it forthwith terminate certain customary telephone service it was furnishing to the Shore Club *874 Hotel because, as the letter stated, the service was being `used in violation of the laws of Florida, particularly the gambling laws'. Upon receipt of this letter Southern Bell Telephone and Telepraph Company advised the Shore Club Hotel that it would discontinue its customary telephone service on March 17, 1954, as it was required to do by Chapter 365, Florida Statutes 1953 [F.S.A.]. This statute does not accord the customary telephone subscriber an opportunity to be heard on the charges of illegal use of the telephone service in violation of the gambling laws before removal of his service, but requires that this be done summarily upon receipt by the telephone company of a request to do so from a law enforcement, such as the letter received here by the telephone company from the Assistant Attorney General. The statute does afford a customary telephone subscriber a hearing before the Florida Railroad and Public Utilities Commission, but by the express provision of the law this may be held only after the telephone service has been discontinued and is limited to the question of restoration of service. It should be added that upon removal of a hotel operator's telephone service under the provisions of Chapter 365 for use in violation of the gambling laws, Section 561.291 automatically provides for the suspension of the operator's hotel license during the period of termination of the service. This is also accomplished without benefit of hearing.
"The question here is simply whether Nineteen Hundred One Collins Corp., is entitled, under the due process clauses of Section 12 of the Declaration of Rights of the Constitution of Florida and Amendment XIV of the Constitution of the United States, to notice and an opportunity to be heard before it can be deprived of its telephone service and hotel license. This question has been thoroughly and ably briefed by the parties to this proceeding and the Court has given it every consideration. It concludes that Chapter 365 and Section 561.291 are unconstitutional.
"The eradication of gambling and its attendant evils is a salutary goal, but the constitutional safeguards accorded a citizen to notice and hearing before the taking of his property and right to engage in business can not be encroached upon in the state's zeal to reach this goal. The irreparable injury which would be occasioned a business man by summary suspension of his telephone service and right to engage in business, should it subsequently develop at the hearing before the Florida Railroad and Public Utilities Commission that the removal was wrongful, is readily apparent. For example, were a law enforcement officer to suspect that an employee of a newspaper was using its telephone service for gambling purposes, he could direct its removal forthwith. The damage which would be done by the loss of this source for the gathering and dissemination of news pending the newspaper's hearing before the Florida Railroad and Public Utilities Commission need not be elaborated upon. And for this injury the newspaper would be afforded no recourse, for Section 365.13, Florida Statutes 1953 [F.S.A.], specifically exempts the telephone company from liability `for any damages or penalties, civil or criminal' for discontinuance of one's telephone service and relief may not be obtained from the state. The slight delay and inconvenience which might be occasioned by granting notice and hearing to a telephone subscriber before termination of his service can hardly justify the irretrievable injury which can be inflicted upon an innocent subscriber by summary suspension of his service without an opportunity to be heard under the powers now granted law enforcement officers by Chapter 365. The avenues for abuse of this power are manifold.

*875 "The Attorney General and counsel for Southern Bell Telephone and Telegraph Company have argued before this Court that the final hearing accorded plaintiff in these proceedings cured any constitutional infirmities as to notice and hearing which may inhere in Chapter 365 and Section 561.291, Florida Statutes 1953 [F.S.A.]. The Court does not share this opinion. The hearing on the merits which plaintiff finally succeeded in obtaining here by way of injunction proceedings was one of grace which it was in the discretion of the Court to grant or refuse. This was not a hearing of right guaranteed by statute to all alike. This was but an indefinite right of review which might have been denied plaintiff. As such it fails to satisfy the requirements of due process."
I concur in the views expressed by the chancellor.
ROBERTS and BUFORD, JJ., concur.