## OLCOTT v. SOUTHERN BELL TEL. & TEL. CO., et al.
### No. 68-6578
Circuit Court, Duval County.

October 3, 1968.

Barry J. Rovins and Daniel F. Hubsch, both of Jacksonville, for the plaintiff.

Harold B. Wahl and Vincent Sgrosso, both of Jacksonville, for the defendant Southern Bell Tel. & Tel. Co.

Edward A. Miller, Tallahassee, Edward D. Cowart, Assistant Attorney General, Miami, and Alfred Taylor, Assistant State Attorney, Jacksonville for the defendant Florida Bureau of Law Enforcement.

ROGER J. WAYBRIGHT, Circuit Judge.

This controversy involves a determination by this court of the question: When a telephone subscriber is given a 48-hour notice by the telephone company, pursuant to Florida Statutes §365.08 (5), that his telephone will be disconnected because it has been used for bookmaking, is the subscriber entitled to invoke the aid of a court to enjoin the disconnecting of his telephone by merely saying the subscriber *did not know* his telephone had been used for that illegal purpose, when the subscriber declines to say the telephone *was not used* for that illegal purpose?

At 11:06 A.M. on August 14, 1968, the plaintiff filed a complaint in this action and immediately applied to this court, ex parte and without notice to either defendant, for entry of a stay order pursuant to Florida Statutes §365.08 —

> ***and provided further, that any such subscriber within such forty-eight hour period, may, upon a showing that special equities are involved and irreparable damage is threatened, apply to the court to stay the discontinuance or removal pending a hearing and determination by such court, whether such service should be discontinued and the facilities removed.***

The complaint showed on its face that the defendant telephone company had given written notice to the plaintiff that it would disconnect his telephone service, number 354-1468, pursuant to Florida Statutes §365.08(5), on notice in writing and request of the director of the division of intelligence and investigation of the Florida Bureau of Law Enforcement, which notice and request asserted that those telephone facilities had been used in violation of Florida Statutes §849.25, relating to bookmaking. The com-

plaint also alleged that several employees of the plaintiff had been charged with the criminal offense of bookmaking arising out of the alleged illegal use of the plaintiffs' telephone service, and that the plaintiff "had no knowledge of the use of his premises or telephone service for such illegal activities." The complaint did not allege that the telephone service had not been used for illegal purposes.

This court required that at least oral notice be given the attorney for the telephone company of the plaintiff's application for stay order, and set the matter for hearing that same afternoon. At that hearing, the plaintiff's attorney, Barry J. Rovins, and the telephone company's attorney, Harold B. Wahl, were present.

After hearing those attorneys, this court stated that the stay order would be granted if the plaintiff amended his complaint, instanter or otherwise, to allege definitely that the telephone service had not been used for unlawful purposes.

Later that same day, those attorneys reappeared before this court, and the plaintiff's attorney presented to the court a proposed order in which it was recited that —

> "Counsel for plaintiff represents to the court that plaintiff will not be able to allege under oath that the telephone was not used for such purposes but that only to his knowledge the said telephone services were not used for such purposes."

This court declined to enter the stay order presented by the plaintiff's attorney.

On August 28, 1968, the defendant telephone company filed a motion to dismiss the complaint. On September 11, 1968, the plaintiff, apparently under the impression that the normal issue-framing rules of civil procedure would be permanently suspended in an action begun under the above-quoted portion of Florida Statutes §365.08(5), filed a "motion for permanent injunction". On September 13, 1968, the plaintiff filed an amended complaint.

Argument on those motions was presented to the court by the attorneys for the plaintiff and the defendant telephone company on September 17, 1968, those parties agreeing that the motion of the defendant telephone company to dismiss the complaint should be considered also to be addressed to the amended complaint. On that same date, September 17, 1968, this court entered an order dismissing the complaint and amended complaint, giving the plaintiff leave to file a second amended complaint, and providing that if the second amended complaint failed to state a cause of action no further amendment would be allowed.

On September 24, 1968, the plaintiff filed a second amended complaint. Each of the defendants filed a motion to dismiss the second amended complaint, and those motions were argued before this court on October 2, 1968.

Ignored will be the fact that the second amended complaint wholly fails to assert any claim against the defendant Florida Bureau of Law Enforcement but seeks compensatory and punitive damages against the defendant telephone company for disconnecting the plaintiff's telephone service and apparently — stretching inference to the breaking point — because it incorporates as count I the original complaint, may be thought to seek a mandatory injunction against the telephone company, to require restoration of the plaintiff's telephone service. This will be ignored in order to proceed immediately to the main, and dispositive, point: the second amended complaint does not allege that the plaintiff's telephone was not used for bookmaking, but only that the plaintiff did not know his telephone was used for bookmaking.

This court holds that a complaint lacking that allegation states no cause of action for a stay order under the quoted portion of Florida Statutes §365.08(5), no cause of action for relief on equitable grounds.

The procedure under which the plaintiff's telephone service was disconnected was long ago held constitutional. See McInerny v. Ervin, 46 So.2d 458 (S.C. Fla., 1950); Dade County News Dealers Supply Co. v. Florida Railroad & Public Utilities Commission, 48 So.2d 89 (S.C. Fla., 1950); Southern Bell Telephone and Telegraph Company v. Nineteen Hundred One Collins Corporation, 83 So.2d 865 (S.C. Fla., 1955).

And, also long ago, it was established that it makes no difference whether the telephone subscriber was unaware of the illegal use to which his telephone was being put, that the question was only whether the telephone was being so used. In Peters v. Southern Bell Tel. & Tel. Co., 70 So.2d 547, 550 (S.C. Fla., 1954), the Supreme Court said —

> The record is clear that gambling activities were being conducted on the premises after the motel was purchased by the appellants; and, under the statute, Chapter 365, the use of the telephone facilities for such purpose requires the discontinuance of such service, without regard to whether the owner of the premises has imputative or, for that matter, actual, knowledge of such use. The question before us, then, is whether a court of equity can grant relief from the penalty imposed by the statute — that is, the discontinuance of the telephone service — under the circumstances alleged above. We think there can be no doubt that under these circumstances, the Railroad & Public Utilities Commission

would require the reinstatement of service instanter — and, perhaps, a refusal to do so might be considered an abuse of the discretion granted to them under the statute — but we know of no way in which a court of equity may relieve from the penalty prescribed by the statute. The rule is well settled that "where any penalty of forfeiture is imposed by statute upon the doing or omission of a certain act, there courts of equity will not interfere to mitigate the penalty or forfeiture, if incurred, for it would be in contravention of the direct expression of the legislative will." Clark v. Barnard, 108 U.S. 436, 2 S.Ct. 878, 890, 27 L.Ed. 780. See also Rainey v. Quigley, 180 Or. 554, 178 P.2d 148, 170 A.L.R. 1149, and cases there cited.

This is not to say that a court of equity, where a showing of "special equities" is made, cannot consider the question of whether the conditions under which the statutory penalty attaches exist, cf. Dade County News Dealers Supply Co. v. Southern Bell Telephone & Telegraph Company, Fla., 48 So.2d 89, and King v. Seamon, Fla. 59 So.2d 859. But no such situation is here presented. It is conceded that the telephones were used for gambling purposes; thus, the penalty imposed by the statute is evoked and, under the terms of the statute, the appellants' only relief is through the reinstatement powers of the Railroad and Public Utilities Commission.

And in Southern Bell Telephone and Telegraph Company v. Nineteen Hundred One Collins Corporation, 83 So.2d 865, 870-871 (S.C. Fla. 2955), the Supreme Court amplified and reiterated —

Peters v. Southern Bell Tel. & Tel. Co., Fla. 1954, 70 So.2d 547, was another proceeding in equity brought to enjoin the telephone company from discontinuing the customary telephone service in the plaintiff's motel under the provisions of Chapter 365, F.S. The temporary injunction was denied and the denial was sustained by this court on certiorari. After the denial of the temporary injunction, service was discontinued by the telephone company which thereupon filed a motion for a summary decree on the ground that upon the discontinuance of the service, jurisdiction over the matter shifted to the Railroad & Public Utilities Commission. The complaint in the injunction proceeding was amended to allege that the plaintiff had only recently acquired the motel and that he had no knowledge at all of the use of the telephone for gambling purposes. The chancellor retained jurisdiction but held that the lack of knowledge on the part of the owner was not sufficient to preclude the discontinuance of the telephone service, which admittedly had been used for gambling purposes. We held that the chancellor properly retained jurisdiction for a full determination of the cause and correctly denied the injunction. It was in this decision that this court used the expression "special equities" as being the basis for an appeal to a court of equity to prevent the discontinuance of customary telephone service. An analysis of the factual situation will reveal that the expression "special equities" was employed as a condition precedent to sustaining the jurisdiction of the court in a situation where it was admitted that the telephones were being used for gambling purposes. Apparently this expression has caused some confusion in the consideration of subsequent cases involving requests for injunctions against the discontinuance of customary telephone service where there is a factual dispute as to whether the telephones are actually used for gambling purposes and such illegal use is denied.

The summary of our previous holdings is simply that where admittedly the telephones are used for gambling purposes, some peculiar or unusual equity will be necessary in the chancery court to forestall the discontinuance of the service. On the other hand, where the use of the telephones for gambling is in dispute, then at any time before the service is discontinued a person who considers himself to be threatened by an unjustifiable discontinuance of his service may proceed in a court of equity to show such lack of justification and thereby sustain the issuance of a restraining order that will prevent the termination of his customary telephone service.

Before the Supreme Court handed down its opinions extracts from which are quoted above, another circuit judge expressed similar views in Gardner v. Southern Bell Tel. & Tel. Co., 1 Fla. Supp. 125, 127 (Circuit Court of Dade County, 1951) —

"The plaintiff, as a prerequisite to his application to a court of equity for injunctive relief in such a case should be required to assert on oath that the telephone in question has not been and is not being used for gambling purposes or in furtherance of gambling."

The only "special equities" or "peculiar or unusual equity" the plaintiff alleges, in his second amended complaint, is that his seafood business suffers without a telephone. As against the clear statements of the Supreme Court above quoted that a telephone subscriber's unawareness of the illegal use of his telephone is not the criterion, and the fact that anyone who has enough use for a telephone to have one put in necessarily suffers if it is taken out against his will, there is nothing "special", "peculiar", or "unusual" about the "equities" alleged in the plaintiff's second amended complaint.

This court could, of course, go into the matter if the plaintiff asserted that his telephone was not used for bookmaking — as the Supreme Court says in the above-quoted portions of its opinions. But the plaintiff adamantly refuses to make such an assertion. Hence, for practical purposes he puts himself in the same posture as was Peters in the above-mentioned Peters v. Southern Bell Tel. & Tel. Co., in which the Supreme Court said "It is conceded that the telephones were used for gambling purposes; thus, the penalty imposed by the statute is evoked and, under the terms of the statute, the . . . only relief is through the reinstatement powers of the [Florida Public Service Commission]."

So far as the plaintiff's claim for damages is concerned, the plaintiff of course cannot obtain from the defendant telephone company either compensatory or punitive damages for performing an act a valid statute requires that defendant to perform.

It is therefore ordered that — (1) The defendants' motions to dismiss the plaintiff's second amended complaint are granted. (2) The second amended complaint, and this action, are dismissed with prejudice. (3) The plaintiff shall receive no relief, shall take nothing, by this action. The defendants shall go hence without day. (4) This is a final, and appealable, order. The judicial labor, so far as this action in this court is concerned, is at an end.